# 24-191

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT



GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY
and GEICO CASUALTY COMPANY,

*Plaintiffs-Appellees,*

*-against-*

BHARGAV PATEL, MD,
PATEL MEDICAL CARE, P.C.,

*Defendants-Appellants,*

and

JOHN DOE DEFENDANTS 1 THROUGH 10,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLANTS

STEFAN BELINFANTI
GARY TSIRELMAN
GARY TSIRELMAN, P.C.
129 Livingston Street, 2nd Floor
Brooklyn, New York 11201
(718) 438-1200

*Attorneys for Defendants-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant Patel Medical Care PC certifies that there is no corporate entity, public or otherwise, that owns 10% or more of the stock of Patel Medical Care PC. Patel Medical Care has no parent corporation or corporate entity.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ..................................................................... 2

STATEMENT OF FACTS ....................................................................... 3

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENTS ............... 8

ARGUMENT ........................................................................................ 13

   I.   THE DISTRICT COURT RELIED ON FACTUAL ERRORS AND A LACK OF RECORD EVIDENCE IN GRANTING GEICO'S MOTION ......... 14

   II.   THE DISTRICT COURT MISSTATED APPELLANTS' DISCUSSION OF *HARVEY FAMILY V. ALLSTATE* AND IGNORED APPELLANTS' SUBMISSION OF *HARVEY'S* RECORD ON APPEAL ................................. 18

   III.   THE DISTRICT COURT MISINTERPRETED THE "IRREPARABLE HARM" STANDARD AND APPLIED IT INCORRECTLY ........................... 20

     A.   The alleged waste of "time" and "resources" resulting from the civil court cases does not amount to irreparable harm ............................. 23

     B.   The "risk of inconsistent judgments" between potential civil court decisions and a future judgment by the district court is not irreparable harm 27

     C.   The "risk of inconsistent judgments" within the civil court is not irreparable harm ................................................................................ 32

   IV.   THE CIVIL COURTS ARE WELL-SUITED TO ADJUDICATE ELIGIBILITY AND FRAUD-BASED DEFENSES AND CONTAIN WELL-KNOWN TOOLS TO NEGATE THE RISK OF INCONSISTENT DECISIONS ......................................................................................... 34

   V.   THE ALLEGED HARM WAS SPECULATIVE AND NON-IMMINENT ........................................................................................ 42

   VI.   THE BALANCE OF THE HARDSHIPS WEIGHS IN APPELLANTS' FAVOR ................................................................................................ 43

   VII.   THE DISTRICT COURT'S ORDER WAS ISSUED IN VIOLATION OF THE ANTI-INJUNCTION ACT ................................................................ 46

i

VIII.   APPELLANTS REPEAT AND REITERATE THEIR  ABOVE ARGUMENTS FOR CLAIMS THAT HAVE  NOT YET BEEN FILED IN COURT ....................................................................................50

IX.   THE SERIOUS ISSUE GOING TO THE MERITS IS REPLETE WITH INCORRECT STATEMENTS ABOUT THE COMPLAINT AND DOCUMENTS SUBMITTED BY GEICO ........................................................51

CONCLUSION……………………………………………………...……………53

CERTIFICATE OF COMPLIANCE.......................................................................54

# TABLE OF AUTHORITIES

**Federal Cases**

*Allstate Ins. Co. v. Avetisyan*
No. 17-CV-04275 (LDH) (RML),
2018 U.S. Dist. LEXIS 222905 (E.D.N.Y. Oct. 30, 2018).............................. 14, 17

*Abkco Music, Inc. v. Sagan*
50 F.4th 309 (2d Cir. 2022)……………………..……………………………….…17

*Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy
& Acupuncture, PLLC*
677 F. App'x 716 (2d Cir. 2017)..................................................................... *passim*

*Atl. C. L. R. Co. v. Bhd. of Locomotive Eng'rs*
398 U.S. 281, 90 S. Ct. 1739 (1970)…………………………………….....29, 30

*Concourse Chiropractic, PLLC v. State Farm Mut. Ins. Co.*
35 Misc. 3d 1213(A)………………………………………………………………26

*CRP/Extell Parcel I, L.P. v. Cuomo*
394 F. App'x 779 (2d Cir. 2010)..………………………………………..…….2, 22, 24

*Freeplay Music, Inc. v. Verance Corp.*
80 F. App'x 137 (2d Cir. 2003*)*............................................................................21

*Gov't Emples. Ins. Co. v. Landow*
No. 21-CV-1440 (NGG) (RER), 2022 U.S. Dist. LEXIS 57715
(E.D.N.Y. Mar. 29, 2022)...........................................................................7

*Gov't Emples. Ins. Co. v. Mayzenberg*
No. 17-CV-2802, 2018 U.S. Dist. LEXIS 195890
(E.D.N.Y. Nov. 16, 2018) ……………………………………………………24, 49

*Gov't Emples. Ins. Co. v. Wallegood, Inc.*
No. 21-CV-1986 (PKC) (RLM), 2021 U.S. Dist.
LEXIS 255849 (E.D.N.Y. July 16, 2021…………………………………………25

*Gov't Emps. Ins. Co. v. Granovsky*
No. 19-CV-6048(EK)(RER), 2022 U.S. Dist.
LEXIS 98905 (E.D.N.Y. June 2, 2022)........................................................ 39, 41, 50

*Gov't Emps. Ins. Co. v. Tolmasov*
602 F. Supp. 3d 380 (E.D.N.Y. 2022) ....................................................... 15, 16, 17

*Gramercy Warehouse Funding I LLC v. Colfin Jih Funding LLC*
2012 U.S. Dist. LEXIS 3244 (S.D.N.Y. Jan. 6, 2012) ………………………………32

*In re Baldwin-United Corp.*
770 F.2d 328, 337 (2d Cir. 1985)............................................................. 48, 49, 50

*In re Martin-Trigona*
763 F.2d 135 (2d Cir. 1985)…………………………………………………….....21

*Jaramillo v. Artus*
No. 9:12-cv-01657-JKS, 2014 U.S. Dist. LEXIS 89786 (N.D.N.Y. July 2, 2014) ...19

*JBR, Inc. v. Keurig Green Mt., Inc.*
618 F. App'x 31 (2d Cir. 2015)…………………………………………........13, 14, 20

*JTH Tax, LLC v. Agnant*
62 F.4th 658 (2d Cir)………...........................................……...……….14, 17

*Kulhawik v. Holder*
571 F.3d 296 (2d Cir. 2009)…………………………………………………………14

*Matter of Part 60 RMBS Put - Back Litig.*
195 A.D.3d 40 (App. Div.)……………………………………………………….33

*Oneida Indian Nation v. New York*
691 F.2d 1070 (2d Cir.1982)........................................................................19

*Ostia Med. v. Gov't Emples. Ins. Co.*,
2004 NYLJ LEXIS 125……………………..………………………………….39

*People v. Aguilera*
82 N.Y.2d 23, 603 N.Y.S.2d 392, 623 N.E.2d 519 (1993)…………………………33

*People v. Evans*
94 N.Y.2d 499 (2000)……………...……………………………..………….……….33

*Precise Physical Therapy Sols. v. State Farm Mut. Auto. Ins. Co.*,
2020 NY Slip Op 20254, 69 Misc. 3d 939, 133 N.Y.S.3d 764 (Civ. Ct.)………..26

*Reuters, Ltd. v. United Press Int'l, Inc.*
903 F.2d 904 (2d Cir. 1990)……………………………………………….21, 31

*Ridgemour Meyer Props., LLC v. Goetz Fitzpatrick LLP*
*(In re Ridgemour Meyer Props., LLC)* 599 B.R. 215 (S.D.N.Y. 2019)..................19

*Rodriguez ex rel. Rodriguez v. DeBuono*
175 F.3d 227 (2d Cir. 1998)...................................................................20

*Sperry Int'l Trade, Inc. v. Gov't of Isr.*
670 F.2d 8 (2d Cir. 1982)…………………………………………………………21

*State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*
*No. 21-CV-5523 (MKB), 2022 U.S. Dist. LEXIS 91241*
*(E.D.N.Y. May 19, 2022)*................................................... 25, 50

*State Farm Mut. Auto. Ins. Co. v. Parisien*
352 F. Supp. 3d 215 (E.D.N.Y. 2018) ....................................... 7, 36, 37

*Storck v. Suffolk Cnty.*
*# 97-9110, 1998 U.S. App. LEXIS 15220 (2d Cir. June 5, 1998)*...........................21

*Ticor Title Ins. Co. v. Cohen*
173 F.3d 63 (2d Cir. 1999)...................................................21

*Tom Doherty Assocs. v. Saban Entm't, Inc.*
60 F.3d 27 (2d Cir. 1995)...................................................21

*United States v. Gerace*
*No. 21-2419, 2023 U.S. App. LEXIS 10939 (2d Cir. May 4, 2023)* .......................46

*United States v. Schurkman*
728 F.3d 129 (2d Cir. 2013)...........................................................7, 46

v

*USA Recycling, Inc. v. Town of Babylon*
66 F.3d 1272 (2d Cir. 1995*)* ………………………………………….............20

*Vasquez v. Van Lindt*
724 F.2d 321 (2d Cir. 1983)…………………………………………………28

**State Cases**

*Andrew Carothers MD PC v. GEICO Indem. Co.*
2006 NYLJ LEXIS 4559……………………………………………………………………………38

*Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*
2013 NY Slip Op 23232, 42 Misc. 3d 30 (App. Term)…………..…….……..26, 33, 37

*Eastern Med., P.C. v. Allstate Ins. Co.*
19 Misc. 3d 775 (Dist. Ct.) ...................................................................38

*Fair Price Med. Supply Corp. v. ELRAC Inc.*
12 Misc. 3d 119 (App. Term) ...............................................................40

*Great Wall Acupuncture v. State Farm Mut. Auto. Ins. Co.*
20 Misc. 3d 136(A) (App. Term)……………………………………………40

*Metroscan Imaging P.C. v. GEICO Ins. Co.*
797 N.Y.S.2d 737 (Civ. Ct.) ...................................................................38

*Painless Med., P.C. v. GEICO*
929 N.Y.S.2d 357 (Civ. Ct.) ...................................................................38

*Radiology Today, P.C. v. GEICO Gen. Ins. Co.*
926 N.Y.S.2d 800 (App. Term) .............................................................37

*Total Chiropractic, P.C. v USAA Cas. Ins. Co.*
56 Misc. 3d 1213(A) (NY Dist Ct 2017) ................................................40

*Valley Physical Med. & Rehab. P.C. v. N.Y. Cent. Mut. Ins. Co.*
193 Misc. 2d 675 (App. Term 2002)…………………………………………..40

*V.S. Med. Servs., P.C. v. Allstate Ins. Co.*
2006 NY Slip Op 26000, 11 Misc. 3d 334, 811 N.Y.S.2d 886 (Civ. Ct.)………..26

**Statutes, Rules and Regulations**

*28 U.S.C. § 1292(a)(1)*..................................................................1

*28 U.S.C. § 1331* .......................................................................1

*28 U.S.C. § 1367(a)*...................................................................1

*28 U.S.C. § 1651(a)*.................................................................46

*28 U.S.C. § 1738* ....................................................................28

28 U.S.C § 2283………………………………………………………2

*Federal Rule of Evidence 201(b)* ..........................................19

## JURISDICTIONAL STATEMENT

The district court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, based upon Plaintiff-Respondents' allegations of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. The district court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a) and principles of pendent jurisdiction. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) based upon the district court's granting Plaintiff-Respondents' Motion for a Preliminary Injunction.

## <u>STATEMENT OF ISSUES</u>

1.  Whether the district court abused its discretion by granting the motion despite a complete lack of evidence concerning the underlying claims and based on factual errors.

2.  Whether the district court erred by finding irreparable harm in contravention of this Court's precedents as set forth in *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779 (2d Cir. 2010), *Fung-Schwartz v. Cerner Corp*., 804 F. App'x 85 (2d Cir. 2020) and related authorities.

3.  Whether the district court abused its discretion with respect to its determination regarding a "balance of the hardships".

4.  Whether the district court's "serious issue going to the merits" analysis misstates the evidence presented and is undermined by assertions that are incorrect.

5.  Whether the district court erred by issuing the preliminary injunction in contravention of 28 U.S.C § 2283 (the Anti-Injunction Act).

## STATEMENT OF FACTS

On April 17, 2023, Appellees Government Employees Insurance Company, Geico General Insurance Company and Geico Casualty Company (collectively, "GEICO") filed the underlying Complaint. Named defendants include Appellants Bhargav Patel, MD and Patel Medical Care, PC. The Complaint consists of five causes of action seeking, in the following order: a declaratory judgment against Patel Defendants holding that they do not have the right to payment for any pending bills that have been submitted to GEICO; a monetary judgment against Patel Defendants pursuant to alleged violation of RICO, 18 U.S.C. § 1962(c); a monetary judgment against Patel Defendants and "John Doe Defendants" for alleged violation of RICO, 18 U.S.C. § 1962(d); monetary damages from Patel Defendants pursuant to common law fraud; and monetary damages from Patel Defendants under the doctrine of unjust enrichment.

According to the Complaint, Patel Defendants "masterminded and implemented a complex fraudulent scheme in which Patel Medical was used to bill GEICO and other New York automobile insurers millions of dollars for medically unnecessary, experimental, excessive, illusory, and/or otherwise non reimbursable healthcare services." A-19. The alleged scheme consisted of unspecified kickback arrangements "with unlicensed laypersons and/or healthcare professionals, including John Doe Defendants." Id. "Pursuant to Patel and Patel Medical's illegal

3

kickback and referral arrangements, Patel and/or Patel Medical made, or caused to be made, payments to unlicensed laypersons and/or healthcare professionals, including John Doe Defendants, in exchange for access to patients who were treated, or purported to be treated, at the Clinics and/or in exchange for patients who would be steered to the Clinics." Id. GEICO alleges that components of the fraudulent scheme include *inter alia,* treatment provided to the patients on a predetermined basis without regard to medical necessity, the use of independent contractors to perform the services, and billing for services that were never performed or that do not reflect the billing codes utilized.

On June 9, 2023, Appellants interposed an Answer to the Complaint, denying the allegations and lodging twenty-eight affirmative defenses that include but are not limited to collateral estoppel and *res judicata*. [A-194]

After an extended dispute with its former attorneys and billing company, Patel Defendants switched collections counsel from the law firm of Choudhry & Franzoni PLLC to Gary Tsirelman PC and caused all pending cases against all carriers to be transferred to new counsel. Soon thereafter, Appellants filed all pending cases against all insurance carriers, including GEICO, in the civil courts of the State of New York.[1]

---

[1] One GEICO matter was mistakenly filed in the Queens County civil court.

4

On November 3, 2023, GEICO submitted a letter motion for a pre-motion conference about its intention to file a motion for a stay and preliminary injunction on Appellants' pending and future civil court and arbitration collection proceedings. That same day, the court denied the letter motion, waived the pre-motion letter requirement, and set a briefing schedule for the motion. The court ordered all documents to be served in accordance with the briefing schedule, then all filed by December 22, 2023.

On December 22, 2023, GEICO filed the preliminary motion referenced above. [ECF 24] Filed along with the motion were exhibits consisting of an affidavit by a GEICO Claims Manager and copies of various decisions from the district court that GEICO cited to in its memorandum of law. According to the motion, GEICO's stay request encompassed 607 pending civil court actions and 2 pending arbitration filings. None of these matters were identified by caption, index number, American Arbitration (AAA) number, or any other means.

 Appellants also filed their opposition to the motion on December 22, 2023. Attached as exhibits were printouts from Ecourts[2], the official state court case search portal, the record on appeal for the matter of *Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 F. App'x 716 (2d Cir. 2017)*,* and transcripts of oral decisions from Hon. Joseph A. Bianco. The number of

---

[2] https://iapps.courts.state.ny.us/webcivilLocal/LCMain

civil court actions was revealed to be 617 rather than 607 per Ecourts. Furthermore, Appellants noted that pursuant to a search of their AAA account, no pending arbitration matters between the parties existed. Nonetheless, Appellants repeated and reiterated the arguments regarding the civil court actions to the AAA matters as a matter of precaution.

GEICO interposed its Reply Memorandum on December 22, 2023.

On January 8, 2024, the district court granted GEICO's motion in its entirety. It held that GEICO had established irreparable harm by allowing the remaining collection arbitrations to proceed before different arbitrators, and the 605 state lawsuits to continue in parallel proceedings, would subject GEICO to "independent and contradictory conclusions" that ultimately may "be rendered ineffective by this Court," pending the disposition of GEICO's federal case. It also stated that "without injunctive relief, GEICO [ ] will suffer irreparable harm in the form of wasted resources and inconsistent arbitration decisions and judicial judgments." The district court averred that staying the civil court matters and proceeding solely in federal court would allow for the adjudication of both parties' respective claims in one forum.

With respect to Appellants' invocation of this Court's ruling in *Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 F. App'x 716 (2d Cir. 2017), the district court stated that "Defendants do not explain,

6

however, how the facts of the instant case are analogous to *Harvey*, beyond general arguments that GEICO's alleged injuries are compensable by monetary damages and therefore GEICO has not established irreparable harm. (Def. Mem. 2-3.)"

On the topic of the "balance of hardships," the district court held that the balance weighs in GEICO's favor as, *inter alia,* "GEICO's evidence in support of the motion for injunctive relief and declaratory relief, as set forth in its motion and exhibits to the complaint 'detail a complicated scheme of alleged fraudulent activity,' *Elzanaty, 929 F. Supp. 2d at 222*, supported by specific examples and exhibits."

Citing the district court's decision in *Gov't Emples. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 U.S. Dist. LEXIS 57715 (E.D.N.Y. Mar. 29, 2022), which itself cited to *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215 (E.D.N.Y. 2018), the district court then ruled that while the Anti-Injunction Act generally prohibits federal courts from enjoining state actions, "because the defendants allegedly acted pursuant to one single scheme, and the federal court had jurisdiction over that scheme, it had the authority to stay the [civil court actions]." It also held that while Appellants cited *United States v. Schurkman*, 728 F.3d 129 (2d Cir. 2013) for the proposition that the Anti-Injunction act bars the district court from enjoining the state cases, Appellants failed to differentiate the facts there with the facts here.

Finally, the district court waived the undertaking requirement for applying a preliminary injunction "in light of the systemic nature of the fraud alleged in the complaint and the lack of prejudice to the defendants resulting from a preliminary injunction" and "in light of the fact that Defendants do not appear to oppose GEICO's request, and do not provide any showing of prejudice that would result."

Pursuant to the foregoing, Patel Defendants appealed.

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENTS

In this action, GEICO asserts irreparable harm from, among other things, the risk of "inconsistent judgments" that "may" be rendered by the state judges regarding the claims still pending against GEICO in the civil court. Having already lost on the merits to Patel Medical in most of the decisions issued thus far, GEICO moved for a preliminary injunction and a stay of Patel Medical's arbitration and civil court cases.[3] The district court (Hon. Kiyo A. Matsumoto) granted GEICO's motion. But as illustrated below, GEICO's alleged harm is not irreparable and in any event is due to its own dubious strategies.

First, the district court abused its discretion by enjoining Patel Medical's civil court cases based on errors of fact. In cutting and pasting word-for-word a large portion from her prior order in an unrelated no-fault case, Judge Matsumoto incorporated statements of facts from the prior matter that are inapplicable here and

---

[3] As stated prior, Appellants position is that there are no pending civil court cases.

relied upon those factual errors as a basis for her decision. The district court also issued its ruling despite a complete absence of evidence—hearsay or otherwise-—regarding the cases it enjoined. Moreover, with respect to this court's ruling *Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 F. App'x 716 (2d Cir. 2017) the district court held that Appellants did not explain how the facts of the instant case are analogous to *Harvey*. However, Appellants annexed the official briefs on appeal in *Harvey,* requested that the district court take judicial notice of the record, and detailed exactly how the insurer there made essentially identical arguments that GEICO does here.

Second, irreparable harm requires imminent risk of a type of injury that money is incapable of rectifying. The district court conflates this concept with GEICO not having the *right* to undo or recoup money paid pursuant to a civil court judgment in Patel Medical's favor.

Furthermore, where the causes of action involve money, preliminary injunctions require monetary loss plus irreparable harm. But here the district court found "irreparable harm" where only monetary loss exists. Each of the two components of irreparable harm cited by the district court—the "wasted resources" caused by GEICO's defending against the civil court actions and the "risk of inconsistent judgments"—results solely in financial loss. Adding them together doesn't change their nature.

9

Third, the court's "inconsistent judgments" theory—namely, that the civil court matters may potentially result in inconsistent conclusions that could be rendered ineffective by the district court's future ruling is misguided because the district court lacks the power to "render ineffective" state court decisions in the first place. It is also vague because the court fails to explain what "conclusions" would be inconsistent, how they would be inconsistent, and the way those inconsistencies would interplay with the federal case. The district court bases irreparable harm on unspecified inconsistencies between civil court judgments that may occur on a future date and might be rendered ineffective by an order it has no power to issue.

Fourth, in the same year that the Complaint was filed, arbitration awards were issued involving the parties. On the issue of medical necessity, Appellants won the majority and GEICO won the remainder. To the extent that these decisions were "inconsistent", GEICO would already have been harmed irreparably. Yet the awards in Appellants' favor merely required GEICO to pay the claims. GEICO wasn't irreparably harmed then, and it isn't irreparably harmed now.

Fifth, the district court's portrayal of GEICO as a victim of Patel Medical's civil court filings due to their "piecemeal" nature is meritless. Whereas it could have scattered its cases among different venues and forums, Patel Medical filed every case in the same venue at or about the same time for the explicit purpose of keeping them together. Furthermore, on many occasions GEICO and other insurers have

10

moved or stipulated with health providers to consolidate and/or join hundreds, thousands, and even <u>all</u> their pending civil court cases for the purposes of discovery or for obtaining <u>one</u> trial decision on issues of provider ineligibility and fraud. In fact, GEICO's counsel of record here was counsel in a joint jury trial involving all cases by a health provider against fifty-three insurance company defendants and involving eighteen million dollars in pending claims.[4] Here, GEICO never pursued any of these options. And for individual actions, the New York Appellate Term has consistently ruled that insurers are entitled to broad discovery regarding eligibility and fraud-based defenses.

Sixth, if GEICO pursued an eligibility defense in one of the civil court cases, any ruling on that issue would be collateral estoppel on the remainder of those matters, thereby avoiding the "risk" of inconsistent decisions in the first place. It's decision not to do is so is strategic avoidance.

Seventh, the district court's premise that staying the civil court cases would allow both parties' respective claims to be "fully adjudicated" via GEICO's federal DJ is false. The court immixes two different concepts: (1) whether a health provider is an eligible entity that has standing to submit no-fault claims to the insurers; and (2) even if that health provider *is* eligible and *does* have standing, whether the claims submitted by that health provider should be paid. Under no-fault law, health

---

[4] This is despite the cases originating in two different venues.

11

providers are already presumed to be eligible for no-fault benefits when they submit bills for reimbursement. But even eligible health providers must prove that they are entitled to payment for each claim in dispute, and the insurers can still rely on those defenses that that they preserved when denying the claims. Furthermore, the district court has no power to grant monetary judgment in Patel Medical's favor for the unpaid claims. It can only grant GEICO the relief it seeks. This approach allows full adjudication only for GEICO.

Eighth, GEICO's supposed harm is speculative, dependent upon wasted resources that *might* result in defending against civil court actions that *might* result in inconsistent decisions that *might* deal with the same issues in a DJ action, and that *might* be contrary to a judgment form the district court. No evidence is presented as to the status of the cases, their procedural posture, the expected final trial dates, and other key issues. No evidence at all was provided regarding the "harm's" imminence.

Ninth, the district court's "balancing of the hardships" suffers from repeated mischaracterizing allegations as "evidence" and misstatements about the citations it references. Furthermore, the district court's assertion that Appellants shall not suffer from the stay of its cases because if GEICO loses its DJ, "then, at worst, [defendants'] recovery of the no-fault benefits to which they are entitled will be delayed," is simply a repackaging of the meritless "full adjudication" theory. The district court's

12

reasoning regarding policy exhaustion also lacks merit, as it burdens Appellants with knowledge in GEICO's exclusive control.

Tenth, the district court's order is violative of the Anti-Injunction Act ("AIA"), which specifically prohibits the enjoining of parallel state court proceedings regardless of whether or how much the district court believes they will cut against its ability to render relief. The court's enjoinment of the civil court cases due to concern about the potential preclusive effect a civil court judgment may have on its ability to eventually grant the relief requested is not only violative of the AIA, but it does also exactly that which the AIA was created to prevent.

Respectfully, the district court's order should be reversed.

## **ARGUMENT**

"A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'" *JBR, Inc. v. Keurig Green Mt., Inc*., 618 F. App'x 31 (2d Cir. 2015). "To successfully seek a preliminary injunction, a moving party must show four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *Id.*

13

Here, GEICO's motion fell far short of establishing justification for a preliminary injunction staying and enjoining Patel Medical's pending and future court actions. The district court abused its discretion by granting the motion.

## I.    THE DISTRICT COURT RELIED ON FACTUAL ERRORS AND A LACK OF RECORD EVIDENCE IN GRANTING GEICO'S MOTION

"[The 'burden of proof and persuasion rest[s] squarely' on the party moving for a preliminary injunction to show that irreparable harm is likely." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31 (2d Cir. 2015), citing *Grand River*, 481 F.3d at 67-68. "[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." *Mullins v. City of N.Y.*, 626 F.3d 47 (2d Cir. 2010). However, "an attorney's unsworn statements in a brief are not evidence." *Kulhawik v. Holder*, 571 F.3d 296 (2d Cir. 2009). Instead, "a plaintiff must present the district court with actual evidence… [that] the plaintiff 'will suffer an injury that is neither remote nor speculative, but actual and Imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm…". *JTH Tax, LLC v. Agnant*, 62 F.4th 658 (2d Cir. 2023).

Here, the district court abused its discretion by granting GEICO's motion despite a complete lack of "actual evidence" about the claims it enjoined and, by extension, making significant misstatements of fact in support of its decision. For example, in discussing *Allstate Ins. Co. v. Avetisyan,* No. 17-CV-04275 (LDH)

14

(RML), where the court rejected the insurer's irreparable harm arguments, Judge

Mastumoto explained her position as to why that decision differs from the instant

action [A-217], stating:

> Defendants also rely heavily on *Allstate Ins. Co. v. Avetisya*, No. 17-CV-4275 (LDH), 2018 U.S. Dist. LEXIS 222905, 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018). That case is materially distinguishable form the present matter. In *Avetisya*n, Plaintiffs argued that an injunction was warranted because continued arbitration and litigation in parallel proceedings presented a serious risk of inconsistent rulings, but the Court found that no such risk existed because the fraudulent coding and billing activity Plaintiffs alleged in support of their federal RICO claim and request for declaratory judgment were not asserted as defenses in the parallel proceedings. 2018 U.S. Dist. LEXIS 222905, [WL] at *2, *4. Here, by contrast, GEICO has asserted lack of medical necessity and fraudulent billing both as a defense in the underlying collections and as a basis for declaratory judgment in this case. (Pl. Reply at 5). Given that Defendants have 605 civil court lawsuits pending against GEICO (Defendants filed almost all 605 after the complaint) that involve the same claims as GEICO's declaratory judgment claim in this action, an injunction staying the state lawsuits until this action is resolved is necessary to aid this Court's jurisdiction, protect this Court's ability to issue a declaratory judgment, prevent inconsistent results, and avoid wasting judicial resources for all parties involved. [Emphasis added]

The above paragraph is word-for-word identical with Judge Matsumoto's

decision in *Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380 (E.D.N.Y. 2022),

where he wrote:

> Defendants also rely heavily on *Allstate Insurance Co. v. Avetisyan*, No. 17-cv-4275, 2018 U.S. Dist. LEXIS 222905, 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018). That case is materially distinguishable from the present matter. In *Avetisyan*, Plaintiffs argued that an injunction was warranted because continued arbitration and litigation in parallel proceedings presented a serious risk of inconsistent rulings, but the Court found that no such risk existed because the fraudulent coding and billing activity Plaintiffs alleged in support of their federal RICO claim and request for declaratory judgment were not asserted as defenses in the parallel proceedings. 2018 U.S. Dist. LEXIS 222905, [WL] at *2, *4. Here, by contrast, GEICO has asserted lack of medical necessity and fraudulent billing both as a defense in the pending arbitrations and as a basis for declaratory judgment in this case. (Pl. Mem. 3). As Defendants have 656 civil court lawsuits pending against GEICO as of Plaintiffs' filing that involve the same claims as GEICO's declaratory judgment claim in this action, an injunction staying the state lawsuits until this action is resolved is necessary to aid this Court's jurisdiction, protect this Court's ability to issue a declaratory judgment, prevent inconsistent results, and avoid wasting judicial resources for all parties involved. [Emphasis added]

Unfortunately, this cut-and-paste approach resulted in statements regarding evidence in *Tolmasov* that does not exist here and that adopted representations by GEICO that are untrue. Specifically, citing to ("Pl Reply at 5"), the district court claims that an injunction is warranted because the civil court cases incorporated by the DJ involve the defenses of fraudulent billing and medical necessity. But "Pl Reply at 5" mentions nothing about fraudulent billing in the civil actions. While the

16

Plaintiff may have provided evidence of such in the *Tolmasov* case, it did not do so here.[5]

With respect to medical necessity, "Pl Reply at 5" does state that the civil court cases involve the lack of medical necessity defense but points to no record evidence in support. Instead, it directs the reader to "see" (without indicating any page numbers or paragraphs) "D.E. 1 (Compl.), passim; P. Memo., passim," which likewise are non-evidentiary submissions. Neither of these documents reference any of the defenses raised in the civil court actions, including medical necessity. In fact, it would be impossible for the Complaint to do so since Patel Medical's civil actions were filed after the Complaint. Accordingly, the district court's attempt to differentiate this matter from *Avetisyan* is based on no evidence at all. Since GEICO did not "present the district court with actual evidence" of regarding any of the claims in dispute, its motion should have been denied. By granting the motion, the district court abrogated its duty to assess the factual allegations about the very target(s) of the injunction. *See JTH Tax, LLC v. Agnant*, 62 F.4th 658 (2d Cir. *2023; see also Abkco Music, Inc. v. Sagan*, 50 F.4th 309 (2d Cir. 2022).

The district court's abuse of discretion is glaring in that Appellants asserted that many of the civil court actions do *not* involve medical necessity, which is in fact

---

[5] The district court also asserts in both paragraphs that the defendants "rely heavily" on *Avetisyan*; however, that matter was referenced only once by Appellants in a string cite and not discussed at all.

the case, and identified by name some of the defenses that those claims were denied upon. [Opp. pgs. 7 and 13]. Yet the district court ignored Patel Medical's representations and adopted GEICO's, effectively rubber stamping its representations without any analysis. The district court's willingness to accept GEICO's counsel's statements as evidence while ignoring Appellants', its conflation of this matter with others, and its incorrect assessment of the very claims underlying the instant case reveal a clear abuse of discretion. These issues also erode other aspects of GEICO's arguments and the district court's decision in two fundamental ways: (1) they undermine the contention (discussed below) that it would be beneficial for Patel Medical to stay the civil court cases so that the federal court can adjudicate its claims along with GEICO's; and (2) they exacerbate the already vague nature of the court's "inconsistent judgment" theory. The order should be reversed.

## II.  THE DISTRICT COURT MISSTATED APPELLANTS' DISCUSSION OF *HARVEY FAMILY V. ALLSTATE* AND IGNORED APPELLANTS' SUBMISSION OF *HARVEY'S* RECORD ON APPEAL

In their opposition papers, Appellants cited to this Court's holding in *Harvey Family Chiropractic Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 F. App'x 716 (2d Cir. 2017). Because several district courts differentiated their decisions from *Harvey* by stating that "*Harvey*'s limited discussion of the underlying facts deprives the court of the ability to

18

meaningfully compare *Harvey* to the present circumstances," Appellants procured the official underlying briefs, annexed them as exhibits to the opposition, requested that the district court take judicial notice of the submissions, and provided authority for such action.[6] Appellants then asserted that *Harvey* decision is determinative of the matter here.

In response, the district court held that "Defendants do not explain, however, how the facts of the instant case are analogous to *Harvey,* beyond general arguments that GEICO's alleged injuries are compensable by monetary damages and therefore GEICO has not established irreparable harm. (Def. Mem. 2-3.)" This representation is inaccurate on many levels.

First, as this Court can see, (Def. Mem. 2-3) does not even mention *Harvey Family.* It is unclear what the district court is referring to. Rather, the discussion of *Harvey Family* is at Def. Mem. 15-18. Appellants gave a three-paged, detailed and thorough analysis (including quotes directly from Allstate's appellate brief) clearly depicting that in *Harvey Family* the facts and arguments made by the insurer in support of a preliminary injunction are identical to here.

---

[6] Appellants cited *Ridgemour Meyer Props., LLC v. Goetz Fitzpatrick LLP* (In re Ridgemour Meyer Props., LLC), 599 B.R. 215 (S.D.N.Y. 2019); *Jaramillo v. Artus,* No. 9:12-cv-01657-JKS, 2014 U.S. Dist. LEXIS 89786 (N.D.N.Y. July 2, 2014) ("Federal Rule of Evidence 201(b) entitles this Court to take judicial notice of facts "not subject to reasonable dispute." FED. R. EVID. 201(b); see *Oneida Indian Nation v. New York,* 691 F.2d1070, 1086 (2d Cir.1982)).

Second, this Court stated in *Harvey,* as it does in many opinions, that "[w]e assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal." The district court could have very easily reviewed the briefs presented to it to determine if Appellants' summarization was accurate. Yet it did not even mention the briefs, let alone refer to them. The foregoing is another example of why the district court's decision should be reversed.

### III. THE DISTRICT COURT MISINTERPRETED THE "IRREPARABLE HARM" STANDARD AND APPLIED IT INCORRECTLY

"'Irreparable harm… is the '*sine qua non* for preliminary injunctive relief.'" *JBR, Inc. v. Keurig Green Mt., Inc., supra,* quoting *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995). "As such, the moving party must first demonstrate that irreparable harm would be 'likely' in the absence of a preliminary injunction 'before the other requirements for the issuance of [a preliminary] injunction will be considered.'" *Id.,* quoting <u>*Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998)*</u>. To show "irreparable harm" the movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." <u>Rodriguez</u>, *supra.*

20

Examples where preliminary injunctions were upheld by the this Court include: loss of unique opportunities;[7] loss of unique services where an employee with unique skills joins a competitor;[8] loss of a unique product to a distributor whose customers expect and rely on the distributor for a continuous supply;[9] loss of customers and the competitive disadvantage resulting from a distributor's inability to supply its customers with the terminated product;[10] loss of unique real estate;[11] and loss of custody of a child.[12]

The common thread is the loss of something other than money that by its very nature renders it unable to be compensated for by money. *See eg. Sperry Int'l Trade, Inc. v. Gov't of Isr.,* 670 F.2d 8 (2d Cir. 1982) ("For potential injury to justify the granting of injunctive relief it must be irreparable; that is, it must be the kind of injury for which an award of money cannot compensate."); *see also Reuters, Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904 (2d Cir. 1990) ("[T]he alleged injury must be one incapable of being fully remedied by monetary damages").

---

[7] Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995)

[8] Ticor Title Ins. Co. v. Cohen, 173 F.3d 63 (2d Cir. 1999)

[9] Freeplay Music, Inc. v. Verance Corp., 80 F. App'x 137 (2d Cir. 2003)

[10] Id., 80 F. App'x 137 (2d Cir. 2003)

[11] In re Martin-Trigona, 763 F.2d 135 (2d Cir. 1985)

[12] Storck v. Suffolk Cnty., # 97-9110, 1998 U.S. App. LEXIS 15220 (2d Cir. June 5, 1998)

This Court has consistently held that loss of money alone is insufficient to establish irreparable harm. Especially instructive is this Court's ruling in *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779 (2d Cir. 2010):

> We have long held that an injury compensable by money damages is insufficient to establish irreparable harm. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). This does not mean that a party at risk of suffering a monetary loss may never receive injunctive relief, but it does mean that, notwithstanding any compensable losses, a movant must provide evidence that it is likely to suffer damage that cannot be rectified by financial compensation before a district court may providently exercise its equitable power to grant injunctive relief…
>
>          \*\*\*
>
> That damages are difficult to measure does not necessarily make otherwise compensable harm irreparable. Thus, we have upheld an award of injunctive relief where a movant claimed money damages that were hard to measure *plus* irreparable harm, including loss of reputation, goodwill and business opportunities. *See, e.g., Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir. 2004) (Lanham Act violations). Similarly, we have found irreparable harm in the context of money damages *plus* a breach of a covenant not to compete where a movant established that a former employee offered unique services, and absent injunctive relief, the company would likely lose a client relationship that would otherwise have produced "an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 68-69 (2d Cir. 1999). However, we have not held that a mere "difficulty" in calculating damages is sufficient to establish irreparable harm.
>
> Nor have we ever held that the fact that recovery would involve a multiplicity of actions is sufficient—standing

22

> alone—to make otherwise compensable harm irreparable. Rather, we have upheld a finding of irreparable harm based in part upon the fact that a multiplicity of damage actions would have been required to assert a movant's rights <u>where the evidence also showed recurrent invasions of the movant's rights, an imminent threat of continued emotional and physical trauma, and a difficulty of evaluating injuries in monetary terms.</u> *See Galella v. Onassis,* <u>353 F. Supp. 196, 235 (S.D.N.Y. 1972)</u> (citations omitted), *aff'd in part and rev'd in part on other grounds,* <u>487 F.2d 986 (2d Cir. 1973)</u>.

Since preliminary injunctions require monetary loss *plus* irreparable harm, the loss of money alone cannot *be* irreparable harm. The district court's ruling is incompatible with this tenet. It combines two types of "harms" that each result only in monetary loss—(1) the waste of "time and resources" harm and (2) the "risk of inconsistent judgments" harm—and presents them together as something more than the sum of their parts. But there is no monetary loss plus irreparable harm here. There is only monetary loss plus monetary loss. Furthermore, the district court confuses harm that a monetary award is incapable of repairing with a monetary judgment from the state court that the district court has no power to undo.

### A. The alleged waste of "time" and "resources" resulting from the civil court cases does not amount to irreparable harm

Judge Matsumoto ruled that GEICO's waste of "time" and "resources" on arbitrations and state court lawsuits that may be "resolved by the instant, pending declaratory judgment action" is a form of irreparable harm. [A-216] This is despite GEICO conceding that the opposite is true. [Pl. Memo at 11] ("Importantly, "mere

23

litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." Mayzenberg, 2018 WL 6031156, at *5.) The district court erred. Such expenditures are ultimately measurable monetarily, regardless of how difficult calculating money damages may be. *See CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779 (2d Cir. 2010).

In any event, those resources are difficult to measure in the first place. While the court describes Appellants' civil court actions in insurmountable terms, there is no meaning without context. The number of Patel Medical cases pending here is neither extraordinary nor overwhelming in the context of no-fault litigation. The idea that GEICO cannot quantify its lost "time" and "resources" with respect to these matters, or that doing so would be so incredibly difficult as to cause irreparable harm, is absurd. It does so every day. GEICO is a multi-billion-dollar entity whose very business is that of engaging in premiums-based risk/loss analysis, assessing damages (bodily injury, property, medical, etc.) related to its insured parties, tracking the payout of claims for medical services, loss wages, liability, and property damage, and performing many calculation-related tasks with respect to millions of policyholders.

Judge Matsumoto also claims that staying Patel Medical's civil court cases and proceeding solely in federal court would avoid those expenditures and allow for the "full adjudication" of both parties' respective cases in one forum. Several district

courts promote this "full adjudication" theory, but though they cite to each other for support, none describe exactly how such "full adjudication" would work.[13] In response to Patel Medical's argument against the "fully adjudicate" theory, the district court states:

> Defendants further dispute that a declaratory judgment in the instant action would "adjudicate" their collection proceedings in a single forum, noting that if it failed to obtain judgment in the instant case, it would still have "the option of defending on the individual defenses that it raised in civil court actions." (Def. Mem. at 6-7.) As noted by Plaintiffs in their reply, however, rather than separately "adjudicating" each of the hundreds of collection actions in state court, a judgment by this Court would determine "whether Defendants are *eligible* to collect no-fault benefits due to the behavior alleged in GEICO's complaint." (ECF No. 26, Plaintiff's Reply in Support ("Pl. Reply"), at 8 (emphasis added).) Such an outcome would indeed provide an opportunity for the "proceedings [to] be resolved globally in a single, pending declaratory judgment action." *Parisien, 352 F. Supp. 3d at 233*. Moreover, Plaintiffs will have to prove their damages if they prevail in this Court.

Judge Matsumoto conflates two different concepts: (1) whether Patel Medical is a health provider that is eligible for no-fault coverage; and (2) whether, even if Patel Medical *is* a covered provider, its *bills* should be paid. The district court's argument that the DJ will fully adjudicate the federal and state actions because it will

---

[13] *See eg. Gov't Emples. Ins. Co. v. Wallegood, Inc.*, No. 21-CV-1986; *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523 (MKB), 2022 U.S. Dist. LEXIS 91241 (E.D.N.Y. May 19, 2022) PKC) (RLM), 2021 U.S. Dist. LEXIS 255849 (E.D.N.Y. July 16, 2021).

25

determine "whether Defendants are *eligible* to collect no-fault benefits" ignores the fact that under New York law, when a health provider files suit or initiates arbitration, there is *already* a presumption that the provider is a covered entity.[14] For the presumption of eligibility to be rebutted, the carrier must raise and prove this defense.[15] Consequently, if GEICO through its DJ fails to prove that Patel Medical is ineligible, the presumption of eligibility that already existed simply remains intact. This does not adjudicate Patel Medical's claims. Like essentially every other type of insurance, the status as a covered insured does not mean that claims submitted by that insured are automatically paid. Patel Medical must still prove in the civil cases that its bills are entitled to payment, just as it was attempting to do before the stay, and GEICO can still defend against payment of those bills based on the non-eligibility defenses that it preserved with respect to each.[16]

Judge Matsumoto also ignores the fact that the district court has no jurisdiction over Patel Medical's causes of action and no power to grant monetary judgments in Patel Medical's favor for the unpaid claims; tellingly, the order is silent as to how

---

[14] *V.S. Med. Servs., P.C. v. Allstate Ins. Co.*, 2006 NY Slip Op 26000, 11 Misc. 3d 334, 811 N.Y.S.2d 886 (Civ. Ct.)*; Precise Physical Therapy Sols. v. State Farm Mut. Auto. Ins. Co.*, 2020 NY Slip Op 20254, 69 Misc. 3d 939, 133 N.Y.S.3d 764 (Civ. Ct.).

[15] *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 2013 NY Slip Op 23232, 42 Misc. 3d 30, 979 N.Y.S.2d 439 (App. Term); *Concourse Chiropractic, PLLC v. State Farm Mut. Ins. Co.,* 35 Misc. 3d 1213(A).

[16] For example, if the denials in a particular case are based on an alleged nonappearance by the injured party to an IME, a failure by Patel Medical to submit the bill within 45 days, a failure to fully respond to outstanding verification requests, or a lack of medical necessity of the services provided, GEICO can assert these defense(s) at the time of trial.

26

exactly this would be accomplished. Instead, the court states only what would happen if *GEICO* were to win, stating that "Moreover, Plaintiffs will have to prove their damages if they prevail in this Court."

The district court's reasoning presumes no other outcome than GEICO's success. It also undermines other aspects of the district court's ruling, such as the "balance of the hardships" discussion [addressed below] holding that "granting the stay and injunction will save all parties time and resources." Patel Medical is an entity with a fraction of the resources that GEICO has. It would not be saving time and resources by foregoing its lawsuits in the state forum that has for decades adjudicated no-fault disputes of all stripes, in favor of a district court that has the power to grant GEICO exactly what it seeks but no ability to grant the relief sought by Patel Medical. The very idea is illogical and another example of abuse of discretion.

**B.**  **The "risk of inconsistent judgments" between potential civil court decisions and a future judgment by the district court is not irreparable harm**

The district court improperly found irreparable harm from a hypothetical risk of inconsistent decisions:

> [A]llowing the remaining collection arbitrations to proceed before different arbitrators, and 605 state lawsuits to continue in parallel proceedings, would very likely subject GEICO to 'independent and contradictory conclusions' that ultimately may 'be rendered ineffective

by this Court,' pending the disposition of GEICO 's instant lawsuit.

There are several problems with this theory. First, it is unclear what the district court means by "independent and contradictory conclusions." The court fails to describe what conclusions it is referencing, the subject matter of those conclusions, the way they would be contradictory, or how they would they relate to GEICO's DJ action. This is especially true where, as here, the claims are based on a variety of different defenses, many of which are not alluded to anywhere in the complaint, as well as defenses concerning alleged violations by the patient.

Second, the district court failed to state how any ruling it issues would "render [the civil court] conclusions ineffective." "Federal courts are required under 28 U.S.C. § 1738 'to give full faith and credit to judgments entered by state courts of competent jurisdiction. . . . The federal court presented with a judgment is required to give that judgment the same force and effect as it has in the state in which it was rendered.' *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 274 (2d Cir. 1977) (citations omitted)." *Vasquez v. Van Lindt*, 724 F.2d 321 (2d Cir. 1983). Here, Judge Matsumoto begins his analysis by referencing a judicial action that the court cannot effectuate in the first place and then bases his finding of irreparable harm on hypothetical rulings from the civil court that may conflict with that action.

28

Third, with respect to a related proposition—that irreparable harm may result due to interference by the state court judgments with the district court's potential future order—the court again cites no appellate authority for this proposition, relying instead on *Liberty Mut. Ins. v. Excel Imaging*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) ("Permitting these individual claims to proceed to arbitration while [insurer's] claim for a declaratory judgment remains pending in this Court puts the Plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case." [Emphasis added]). Aside from invoking two hypotheticals, this theory is meritless because "a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atl. C. L. R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 90 S. Ct. 1739 (1970). "This rule applies regardless of whether the federal court itself has jurisdiction over the controversy, or whether it is ousted from jurisdiction for the same reason that the state court is." *Id.* Therefore even if a decision issued by the civil court were going to prove "inconsistent with the ultimate decision in this case," the district court is prohibited from interfering with it.

Fourth, with respect to the assertion that the stay was warranted to "protect[] the district court's] ability to issue a declaratory judgment," the district court again

points to no statute or appellate law allowing for an in injunction to be issued against state actions based on protecting the ability to issue a future declaration. To the contrary, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state   courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of §2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." *Atl. C. L. R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 90 S. Ct. 1739 (1970).

Fifth, even where a federal question is at issue (which it isn't with respect to the DJ), GEICO must seek relief through the state court system. Claiming irreparable harm does not override this stricture. *Id.* ("[L]ower federal courts possess no power whatever to sit in direct review of state court decisions…if…the union faced the threat of immediate irreparable injury sufficient to justify an injunction under usual equitable principles, it was undoubtedly free to seek such relief from the [state] appellate courts") [emphasis added].[17] In *Bhd. of Locomotive Eng'rs, supra,* the irreparable harm alleged was clearly nonmonetary, involving restrictions by the State on the movant's right to free speech through picketing. Yet even there the Supreme Court prohibited enjoinder of the state action despite the alleged irreparable

---

[17] In *Bhd. of Locomotive Eng'rs,* the irreparable harm alleged was clearly nonmonetary in nature, dealing with freedom of speech restrictions related to the movant's right to picket.

harm, confirming that the irreparable harm query does not exist in vacuum. Its application must be in line with, not disharmonious with, the Anti-Injunction act and all other prohibitions against federal interference with state proceedings. Here, the district court drifted into legislative territory by negating these prohibitions through its incorrect judicial interpretation of the "irreparable harm" standard.

Sixth, none of the hypothetical "inconsistent decision" situations described above implicate irreparable harm in the first place. Irreparable harm is harm that money itself as a form of remedy is incapable of addressing. *Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990). Here, the district court immixes (a) harm that money is *incapable* of remedying, with (b) GEICO not being *entitled* to that remedy pursuant to a state judgment requiring it to pay the claim. GEICO's monetary loss is certainly capable of being rectified by reversing the money judgment, but GEICO does not have the right to do so through the district court. That a civil court judgment forces GEICO to pay a claim subject to the DJ action is not equivalent to money itself being incapable of rectifying GEICO's harm; it is just confirmation of the dual sanctity of parallel proceedings that courts on the federal and state level enjoy and the well-established rule that the district court cannot impede the state court's handling of its own affairs. GEICO's remedy would be to appeal at the state level.

### C. The "risk of inconsistent judgments" within the civil court is not irreparable harm

To the extent that the district court's "inconsistent judgment" analysis refers to decisions rendered by the civil court, this is also insufficient to establish irreparable harm.

Each of Patel Medical's cases requests monetary relief for failure by GEICO to pay the outstanding claim(s). Any judgment issued in the civil court would be either a money judgment for Patel Medical or a dismissal of the action, and any inconsistency between these two results would either require payment by GEICO or void the claim in much the same manner that that GEICO's DJ seeks. GEICO has not articulated a loss of reputation, goodwill, a unique item, employee, chattel, trade secret, or business opportunity, that would spring from such a result. Certainly, GEICO will not be driven into bankruptcy should Patel Medical win monetary judgments, and there is no evidence in the record that Patel Medical is on the brink of insolvency. As a result, the district court's holding that GEICO is subject to imminent irreparable harm simply because the civil court may issue "inconsistent" judgments regarding payment of claims is meritless. *Gramercy Warehouse Funding I LLC v. Colfin Jih Funding LLC*, 2012 U.S. Dist. LEXIS 3244 (S.D.N.Y. Jan. 6, 2012).

Second, neither GEICO nor the court articulate why an inconsistent decision on the DJ's core issue would even occur in the first place. If GEICO were to assert

in one of the state actions its eligibility defense based on the conduct alleged in the Complaint, the court's decision on that issue would result in collateral estoppel for all the other cases pending between the parties and there would be no risk of inconsistent decisions. "Underlying the collateral estoppel doctrine is a desire to conserve the time and resources of the court and the parties, and to avoid possible inconsistent determinations." *People v. Aguilera*, 82 N.Y.2d 23, 603 N.Y.S.2d 392, 623 N.E.2d 519 (1993); *see also People v. Evans*, 94 N.Y.2d 499 (2000); *See also Matter of Part 60 RMBS Put - Back Litig.*, 195 A.D.3d 40 (App. Div.). Collateral estoppel is so ingrained in New York judicial system that even a prior no-fault arbitration award on a decided issue will have collateral estoppel effect on subsequent court actions between the same parties. *See Martin v. Geico Direct Ins.*, 31 A.D.3d 505 (App. Div.) and *Uptodate Med. Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 23 Misc. 3d 42 (App. Term).

Conversely, if GEICO chooses *not* to proceed on its ineligibility or fraud-related defenses, then any inconsistencies between the civil court decisions would be limited to the specific bills at issue in that case. There would be no *res judicata* effect on the eligibility issue, a point that the New York Appellate Term specifically addressed in *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 42 Misc. 3d 30, (App. Term), the Court held:

33

Plaintiff argues that the defense that plaintiff was ineligible to recover no-fault benefits was barred by the doctrine of res judicata because some of the defendants, including Progressive, had been involved in litigation with plaintiff in prior actions in which plaintiff had prevailed, and had failed to raise or litigate that defense in those prior actions…The Civil Court noted that the claims for first-party no-fault benefits at issue in this joint trial differed from the claims for first-party no-fault benefits that had been litigated in the prior actions, and that plaintiff had presented the court with no proof that the ineligibility defense had been "actually and necessarily" determined in any of the prior actions (*Smith v Kirkpatrick*, 305 NY 66, 70, 111 NE2d 209 [1953]). In our view, the Civil Court's determination was proper.

The district court's "inconsistent decisions" philosophy should be rejected. The court's premise, based on a complete lack of record evidence and subject to a variety of possible future litigation strategies completely under GEICO's control, involves significant conjecture.

## IV. THE CIVIL COURTS ARE WELL-SUITED TO ADJUDICATE ELIGIBILITY AND FRAUD-BASED DEFENSES AND CONTAIN WELL-KNOWN TOOLS TO NEGATE THE RISK OF INCONSISTENT DECISIONS

Driving the district court's irreparable harm thesis is the false perception of the civil court system and GEICO's ability to litigate within it. GEICO asserts that Patel Medical's filing of cases in the civil court is part of the scheme to defraud GEICO out of money by pursuing sham claims. [Pl. Memo 9-10] It claims that its hands are tied because Appellants filed hundreds of "individual lawsuits," in the civil

34

courts in a piecemeal fashion, rendering it impossible for GEICO to obtain sufficient discovery necessary to present evidence of the fraudulent scheme and to prosecute its defense in a coherent way. [Id. at 3, 9-10] The district court adopted these arguments, alluding to the "piecemeal" nature of the civil court proceedings and referring to the civil court actions as a "race to inconsistent decisions". But this entire line of reasoning lacks merit.

First, the argument that Patel Medical "created a race to risk inconsistent adjudications" and filed its court cases in a piecemeal manner that impedes GEICO's ability to prove its fraud defense is baseless. There are over a dozen civil and district court venues where no-fault cases are filed, not to mention the arbitration forum. Patel Medical easily could have scattered its pending cases among these venues and forums if it desired to prevent GEICO from presenting a viable eligibility defense. Instead, Patel Medical filed every pending case against it in the same civil court county (Richmond County), and all at about the same time. GEICO never challenged this fact. The entire point was to keep the cases together.

Furthermore, as the record reflects, Patel Medical provided evidence [Pl. Opp. Ex. 4] directly from the official New York electronic case tracking system that it also filed civil cases against other insurance companies (none of which have filed any federal actions against Appellants) approximately the same time that it filed the cases against GEICO, many before. As stated in its opposition papers and easily

confirmed by the fact that the published arbitration decisions predating the complaint list a different collections counsel for Appellants, the reason that the subject cases were filed after the complaint is because of a lengthy dispute between Appellants and their former counsel, resulting in a delay in filing and a transfer of all matters to the undersigned's firm. [Pl. Opp 25] But the district court ignored Patel Medical's arguments and the evidence presented and adopted GEICO's position.

Second, GEICO's depiction of the civil court is false. It points to no actual supporting evidence. The only sworn document is an affidavit by a GEICO claims manager who makes conclusory statements about the court system without explaining her basis of personal knowledge.

Third, GEICO cites the *State Farm Mut. Auto. Ins. Co. v Parisien*, 352 F Supp 3d 215, 225 [EDNY 2018] decision for support, which itself cites no record evidence. *Parisien* is not helpful to GEICO's cause. The *Parisien* court noted that the existence of parallel proceedings in state court are insufficient to warrant a preliminary injunction even if they would have *res judicata* effect on the federal case:

> [T]he law is clear that the mere pendency of a parallel proceeding in state court, in and of itself, is insufficient grounds to invoke the exception. This is so even where the state proceeding threatens to preclude the federal court from reaching the same issue through res judicata or collateral estoppel.

36

And although the court in *Parisien* carved out a dubious exception to this rule, its reasoning was that "while in theory the [civil court] matters could be consolidated… [t]he Court has been unable to locate any New York case in which hundreds of claims by <u>different providers</u> and relating to different accidents have been consolidated. [Emphasis added]" Here, the civil court actions involve the same provider.

Despite the *Parisien* court's unsuccessful search, there are many examples wherein insurance carriers including GEICO have consolidated or joined hundreds, thousands, and even <u>all</u> no-fault civil court cases for discovery, motion and/or trial purposes with the specific goal of obtaining <u>one decision</u> on fraud-related or eligibility-related issues. For instance:

A. In <u>Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.</u>, 2013 NY Slip Op 23232, 42 Misc. 3d 30, 979 N.Y.S.2d 439 (App. Term) "[a] <u>joint trial</u> was held on actions pending in <u>Kings County</u> and <u>Richmond County between the plaintiff</u> and <u>53 insurers and self-insurers</u>, including this action." Not only were "different accidents" involved, but the parties consolidated "<u>thousands</u>" of no-fault actions totaling <u>18 million dollars</u> in pending claims, far more than GEICO's suit involves here. The parties completed a jury trial on the issues, and the verdict for the insurers was affirmed by every appellate court all the way to the Court of Appeals. Notably, the law firm for GEICO here was also the firm for one of the insurer's counsels in <u>Carothers</u>.

B. In <u>Radiology Today, P.C. v. GEICO Gen. Ins. Co.</u>, 2011 NY Slip Op 21161, 32 Misc. 3d 4, 926 N.Y.S.2d 800 (App. Term), GEICO "moved for an order, among other matters, <u>consolidating this action with 201 other actions pending between the parties</u>, compelling Dr. Solomon to appear for a

deposition in relation to the consolidated actions, compelling discovery of the documents and information previously sought and authorizing additional discovery with respect to plaintiff's contractual relationships with other corporate providers and with certain named individuals." The civil court granted the motion, which the health provider appealed. The Appellate Term affirmed the lower court's order and upheld the dismissal of the health provider's 200 claims based on failure to respond to discovery demands.

C. In Andrew Carothers MD PC v. GEICO Indem. Co., 2006 NYLJ LEXIS 4559, GEICO and the health provider stipulated to "resolve[ ] an important threshold question for purposes of several hundred actions pending between them in this and other courts." Furthermore, "[i]n a Stipulation dated July 14, 2006, the parties agreed that this Decision and Order shall be controlling upon the parties in actions wherever venued and shall have the binding effect of collateral estoppel and be dispositive of the issues presented, subject to the rights of either party to appeal.

D. In Eastern Med., P.C. v. Allstate Ins. Co., 19 Misc. 3d 775 (Dist. Ct.), the Suffolk County District Court, at the insurance carrier's request, consolidated all matters between the health provider and insurer for the purposes of adjudicating its affirmative defense of fraudulent incorporation.

E. In Metroscan Imaging P.C. v. GEICO Ins. Co., 2005 NY Slip Op 25228, 8 Misc. 3d 829, 797 N.Y.S.2d 737 (Civ. Ct.), "the court grant[ed] [GEICO's] prayer for relief to the extent of consolidating the 61 actions with the within matter for the purposes of amending the answer and setting same down for a framed issue hearing on August 2, 2005 as to whether the plaintiff professional corporations were fraudulently incorporated under Business Corporation Law §§ 1507 and 1508 and Education Law § 6507 (4) (c)."

F. In Painless Med., P.C. v. GEICO, 2011 NY Slip Op 21228, 32 Misc. 3d 715, 929 N.Y.S.2d 357 (Civ. Ct.) GEICO moved for an

order <u>consolidating all no-fault actions</u> between three different plaintiff corporations and itself to resolve the issues in dispute there.

G. In <u>Ostia Med. v. Gov't Emples. Ins. Co.</u>, 2004 NYLJ LEXIS 125, the Court granted GEICO's motion to consolidate 48 cases against the same health provider for the purposes of conducting a deposition on medical necessity and fraud issues.

Even though Appellants presented in their opposition papers these specific examples where the supposed risk of inconsistent decisions problem was directly overcome, the district court did not even address, let alone discuss, this entire line of discussion.

Appellants' point has not gone unrecognized by the district courts. As the court in *Gov't Emps. Ins. Co. v. Granovsky*, No. 19-CV-6048(EK)(RER), 2022 U.S. Dist. LEXIS 98905 (E.D.N.Y. June 2, 2022) held,

> GEICO has not eliminated the possibility that it has other avenues to success in the state courts. Depending on the factual overlap, GEICO could seek to consolidate two or more of the pending cases under <u>C.P.L.R. § 602(a)</u>… But GEICO argues that *this particular series* of New York cases is truly extraordinary, and if that is so, then even a generally disfavored remedy may be appropriate. Indeed, Defendants have claimed that they "welcome the opportunity" to have all the disputed claims resolved in a single court (albeit a federal court). Eisenberg Decl. ¶¶ 4-6. At a minimum, GEICO should explain why consolidation is impractical, but it has not done so persuasively in this case.

Fourth, consolidation and/or joinder isn't required for an insurer to obtain broad discovery in the first place. Even where a single action is involved, the Appellate courts have repeatedly affirmed a no-fault insurer's right to broad discovery where the insurance carrier has alleged financial fraud, illegal ownership of health providers, improper billing and/or illegal self-referrals. *See eg. Valley Physical Med. & Rehab. P.C. v. N.Y. Cent. Mut. Ins. Co.*, 193 Misc. 2d 675 (App. Term 2002):

> In light of the Insurance Law's requirement that insurers enact fraud prevention plans (Insurance Law § 409), and the New York State Department of Insurance's opinion letters urging insurers to be more vigilant about potential fraud, discovery requests pertaining to plaintiff's license status and corporate structure, which are related to allegations of fraudulent billing, are proper discovery subjects

*See also Great Wall Acupuncture v. State Farm Mut. Auto. Ins. Co.*, 20 Misc. 3d 136(A) (App. Term); *All Boro Psychological Servs., P.C. v. Allstate Ins. Co.*, 39 Misc. 3d 9 (App. Term); *Total Chiropractic, P.C. v USAA Cas. Ins. Co.,* 56 Misc 3d 1213(A) [NY Dist Ct 2017]; *Lexington Acupuncture, P.C. v Gen. Assur. Co.*, 35 Misc 3d 42, 43 [App Term 2012]; *Fair Price Med. Supply Corp. v. ELRAC Inc.*, 12 Misc. 3d 119 (App. Term); *Harden St. Med., P.C. v Charter Oak Fire Ins. Co.*, 55 Misc 3d 1220(A) [NY Dist Ct 2017]. In fact, the district court (erroneously) claims that GEICO has revealed substantial evidence of the fraudulent scheme allegedly

40

engaged in by Appellants. Therefore, discovery wouldn't even be needed to obtain these items. The district court did not explain why this information could not be introduced at a trial in the state court to prove ineligibility of Patel Medical.

Fourth, with respect GEICO's allegation that the civil court is an unwitting vector of irreparable harm due to Appellants' filings being part and parcel of the fraud, as the *Granovsky* court also noted, the civil court has tools available for addressing GEICO's claim:

> There are other potential rejoinders to GEICO's argument that it is helpless to stem the tide in state court. If it is true that all 160 state cases involve the attempt to collect on fraudulent claims, then the New York courts will be able to contemplate sanctions against the parties (and, perhaps, attorneys) bringing them. *See* <u>22 N.Y.C.R.R. § 130-1.1</u>. Indeed, that is the very purpose of sanctions under <u>Section 130-1.1</u>: to discourage frivolous (let alone fraudulent) litigation.

In addition to the foregoing, CPLR 5015(3) allows that "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of… fraud, misrepresentation, or other misconduct of an adverse party."

GEICO is a sophisticated litigant. It is well-aware of its options. Yet despite utilizing some of them before, GEICO complains that it is handcuffed by Patel Medical's lawsuits to the point where the "extraordinary remedy" of a preliminary

injunction is required to free it. GEICO cannot assert "irreparable harm" while ignoring curative steps that it has availed itself of in the past. "Having chartered [its] own course, plaintiff should now be allowed to suffer its consequence." *Duval v CenterLight Health Sys., Inc*., 189 AD3d 576, 577 [1st Dept 2020].

## V.   THE ALLEGED HARM WAS SPECULATIVE AND NON-IMMINENT

To establish irreparable harm, the movant must prove that the harm alleged is

imminent

and non-speculative. *See Fung-Schwartz v. Cerner Corp.*, 804 F. App'x 85 (2d Cir. 2020). As described above, every aspect of the alleged harm speculative. The triggers of the alleged harm are vague and based on layers of hypotheticals: *if* the civil court issues judgments and *if* those judgments are inconsistent in some undefined way either with each other or with a potential future judgment that *may* be issued by the district court, then irreparable harm will occur. But "harm that follows 'only from a chain of speculative future events' does not constitute irreparable harm in context of a stay…" *Town of Newburgh v. Newburgh EOM LLC*, No. 23-CV-4212 (CS), 2024 U.S. Dist. LEXIS 63958 (S.D.N.Y. Apr. 8, 2024). "Defendants appear to contend that they will be irreparably injured if the state court litigation reaches a judgment before the [district court] decides their [case], assuming the [it] rules in their favor. The possibility of that injury, if it were to arise, is both

42

"remote [and] speculative," and does not demonstrate a likelihood of irreparable harm." *Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.*, No. 20-CV-5153 (NGG) (JMW), 2021 U.S. Dist. LEXIS 197444 (E.D.N.Y. Oct. 12, 2021). That the court inaccurately describes the defenses at issue for those claims compounds the problem.

The hypothetical nature of the harm also proves lack of imminence. No evidence is provided as to the status of the civil actions, when a final trial may be held, when a judgment may be issued, whether there is pending motion practice, or any other details whatsoever. Standing alone, these deficiencies warranted denial of the motion.

## VI.   THE BALANCE OF THE HARDSHIPS WEIGHS IN APPELLANTS' FAVOR

In ruling that the balance of hardships tips in GEICO's favor, the district court essentially repeats the opinion that GEICO will suffer irreparable harm from the time and resources spent defending against the civil suits and the risk of inconsistent judgments. It also cites to its own prior cases, stating, "[i]f GEICO fails to prove its claims, then, at worst, Defendants' recovery of the no-fault benefits <u>to which they are entitled</u> will be delayed; all Defendants can hope for in pursuing their parallel state lawsuits and arbitrations is to <u>accelerate their receipt of benefits to which they are already entitled</u>. [Emphasis added]." This is a repackaging of the "full

adjudication" argument. Aside from being speculative, the district court doesn't explain why a health provider would be "already entitled" to payment for their claims if the insurer does not prove its federal case. Appellants must *prove* entitlement in the civil courts.

The juxtaposition between the parties' circumstances is self-evident. GEICO has not paid any no-fault benefits with respect to Patel Medical's bills that are the subject of GEICO's DJ claims and seeks to continue avoiding payment via declaration. For Appellants, it is the exact opposite. Appellants have submitted bills for reimbursement of no-fault benefits and is now seeking to recoup its losses pursuant to the governing regulations. It is illogical to hold that denying a stay is somehow *more* harmful to the party that has *not* paid any money for the declaratory judgment claims (and may never do so unless Patel Medical successfully litigates its state court actions) than it is for the party trying to recover expenses on the unpaid claims. The fact is that if Patel Medical's cases are stayed, and GEICO fails to prove its federal case, the civil court actions would have laid stagnant on the court's calendar for years, only to then awaken and proceed as though nothing had happened in the time between. And GEICO would have the option of defending against those actions. The balance of hardships certainly tips in Appellants' favor.

Furthermore, the danger of "policy exhaustion" would increase exponentially if a stay of Patel Medical's cases were granted. The district court

44

rejected this fact, stating that "as noted by Plaintiffs in their reply, Defendants do not identify any claims that might actually be rendered uncollectable, or any reason why Defendants could not collect on their claims from other payors should a hypothetical policy be exhausted (Pl. Reply 8)." This argument is without merit. It is the carrier, not the health provider, that would have exclusive knowledge about how much money was left on the policy, how many claims from other health providers remained unpaid, the amount of those other claims, the status of those claims, whether those claims had been denied or were in the verification process, when those claims were received, and a host of other information about them. And with respect to "other payors" the district court does not explain what it means. At "Pl. Reply 8," to which it cites, GEICO argues:

> "Defendants never explain why, even if some completely unspecified GEICO no-fault insurance policies were exhausted during a stay of the Defendants' collections, they could not simply collect on their claims from other payors (including their patients' private health insurance plan, Medicare, or Medicaid), or assert a lien against any recovery realized from a personal injury lawsuit by the patient against a third-party."

The district court cites no case law, statute, regulation, or any other type of authority in support of its proposition. Medicare applies only to persons over aged 65 with exceptions for individuals suffering from end stage renal disease or ALS.[18]

---

[18] https://www.hhs.gov/answers/medicare-and-medicaid/who-is-eligible-for-medicare/index.html

Medicaid likewise has coverage prerequisites.[19] With respect to liens, the district court presupposes that the patients have pending personal injury cases and neglects to mention the prohibition between pursuing liens and litigation concurrently. The district court also assumes that the patients have private health insurance plans and that those plans accept the submission claims pursuant to no-fault accidents. The district court accepted these multiple hypotheticals as fact yet denied Patel Medical's argument about exhausted cases as hypothetical.

## VII. THE DISTRICT COURT'S ORDER WAS ISSUED IN VIOLATION OF THE ANTI-INJUNCTION ACT

Under the All Writs Act, all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a)." United States v. Gerace, No. 21-2419, 2023 U.S. App. LEXIS 10939 (2d Cir. May 4, 2023). "The All Writs Act must be read in conjunction with the Anti-Injunction Act, 'which tempers the potency of the All Writs Act by limiting the circumstances under which a federal court may enjoin state court proceedings.' *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013) Id. The Anti-Injunction Act provides that federal courts "may not grant an injunction to stay proceedings in a State court except [1] as

---

[19] https://www.hhs.gov/answers/medicare-and-medicaid/who-is-eligible-for-medicaid/index.html

46

expressly authorized by Act of Congress, or [2] where necessary in aid of jurisdiction or [3] to protect or effectuate its judgments." *Id.*

In response to Appellants' argument that the district court cases relied upon by GEICO are contrary to *Shurkman,* Judge Matsumoto opined that "Defendants do not explain specifically what those decisions decided incorrectly, but instead summarize the Second Circuit's opinion in *Shurkman* before arguing that 'there is simply no way that *Shurkman* applies to this action' without offering any meaningful analysis. (Def. Mem. at 23.). This is in inaccurate portrayal. Appellants dedicated almost a page and a half specifically discussing exactly why the district court cases are contrary to *Shurkman*. Appellants noted, *inter alia,* that:

> GEICO relies on a line of district cases that cite to United States v. Schurkman, 728 F.3d 129 (2d Cir. 2013), for the proposition that injunctions in the no-fault field fall within an exception to the almost absolute bar against injunctions in *in personam* matters. Yet Schurkman makes clear that such application is improper. In Schurkman, before discussing why it applied an exception in In re Baldwin-United Corp., 770 F.2d 328, 337 (2d Cir. 1985), the Court took pains to reiterate that "because 'an *in personam* action involves a controversy over liability rather than over possession of a thing[,] . . . an *in personam* action generally does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause of action is pending." The court spent a significant amount of time explaining why it made a very rare exception due to the specific elements in In re Baldwin, and then went ahead and denied the preliminary injunction request in the instant matter anyway.

47

Appellants also pointed out that this Court "took pains to reiterate that "because 'an *in personam* action involves a controversy over liability rather than over possession of a thing[,] . . . an *in personam* action generally does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.'" And Appellants' further noted that this Court spent a significant amount of time explaining why it made a very rare exception due to the specific elements in *In re Baldwin Corp.,* stating that "[i]n crafting that exception, however, we relied on the exceptional circumstances of that case—the case's extraordinary complexity and multidistrict nature, the fact that 18 of the 26 defendants had already settled, and the fact that there was a 'substantially significant prospect that [the remaining] 8 defendants [would] settle in the reasonably near future.'"

*In Re Baldwin Corp.* itself makes it obvious why the instant matter is distinguishable. As this Court there summarized:

> The circumstances faced by Judge Brieant threatened to frustrate proceedings in a federal action of substantial scope, which had already consumed vast amounts of judicial time and was nearing completion. Some <u>100,000 plaintiffs</u> participated as parties in the action, compared to a mere 50 who chose to opt out. Settlement negotiations in the federal court had been under way for many months, <u>agreement had been reached,</u> <u>and all that remained was approval of the settlement by the district court.</u> <u>Several evidentiary</u> hearings on the settlement had been held, featuring <u>testimony by representatives of the plaintiffs, the defendants, and various state agencies.</u> The district court had before it <u>thousands of pages of materials regarding the rehabilitation proceedings in courts in Arkansas and</u>

48

> Indiana. In contrast, although the Baldwin bankruptcy occurred in 1983, the states waited until the eve of settlement approval to take any significant actions against the broker-dealers.

This Court concluded that "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control. Similar authority for the injunction comes from the court's power to protect and effectuate its order provisionally approving the 18 settlements." Here, there is one plaintiff, not one hundred thousand. This matter involves one district, not multiple districts. No settlement agreement has been reached and no evidentiary hearings have occurred. It is not "so far advanced that it [is] the virtual equivalent of a res over which the district court required full control." Since the district court is imbued with intimate knowledge of the underlying facts and legal issues in this case, Appellants did not believe it necessary to reiterate what docket depicts in order to differentiate this case from the unanalogous facts in *In re. Baldwin Corp.* or *Shurkman.*

With the exception of extraordinary circumstances akin to *In re Baldwin Corp.,* the Anti-Injunction Act specifically anticipates that concomitant actions between the same parties will occur and yet precludes that a basis for injunctive relief with respect to *in personam* actions. Even district court matters that erroneously found irreparable harm support this outcome. *See eg. Gov't Emples. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 U.S. Dist. LEXIS 195890 (E.D.N.Y.

49

Nov. 16, 2018). *Allstate Ins. Co. v. Pierre*, No. 23-CV-06572 (NGG) (LB), 2024 U.S. Dist. LEXIS 3826 (E.D.N.Y. Jan. 8, 2024); *Gov't Emps. Ins. Co. v. Granovsky*, No. 19-CV-6048(EK)(RER), 2022 U.S. Dist. LEXIS 98905 (E.D.N.Y. June 2, 2022); *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523 (MKB), 2022 U.S. Dist. LEXIS 91241 (E.D.N.Y. May 19, 2022) ("Because of the narrow reach of the holding in *Baldwin-United*, the Court declines to expand the in-aid-of-jurisdiction exception beyond its existing contours to permit the stay of pending state court actions.")

By granting the injunction, the district court essentially broadened the relitigation exemption to include possible future judgments as opposed to just existing judgments. But Congress could have crafted an exception to the Anti-Injunction Act allowing federal courts enjoin state courts "to protect or effectuate" potential future judgments if it had so desired. It didn't.

## VIII. APPELLANTS REPEAT AND REITERATE THEIR ABOVE ARGUMENTS FOR CLAIMS THAT HAVE NOT YET BEEN FILED IN COURT

With respect to future civil court actions that have not been filed yet, and except for the discussion of the Anti-Injunction Act, Appellants adopt the foregoing arguments and reiterate then here as though fully set forth herein. The harm identified by the court is even more speculative and non-imminent with respect to

50

future court filings, and the threat of irreparable harm is nonexistent. This portion of the court's order should be reversed as well.

## IX. THE SERIOUS ISSUE GOING TO THE MERITS IS REPLETE WITH INCORRECT STATEMENTS ABOUT THE COMPLAINT AND DOCUMENTS SUBMITTED BY GEICO

Citing to Compl. P 51-55, the district court claims that GEICO offers significant details and "documents" regarding "the existence of an elaborate kickback and referral scheme". But no documents are provided with respect to an elaborate kickback scheme. Other than the complaint stating "Patel and Patel Medical obtained patients at the Floral Park Clinic pursuant to illegal kickback and referral arrangements," not one specific detail, let alone document, is offered regarding exactly who the kickbacks were made by, who they were made to, what the kickbacks consisted of, when these kickbacks occurred, the manner in which they were effectuated, the amount of the kickbacks, or any other specifics concerning the them. In fact, the Complaint is indecisive in this respect, repeatedly stating that these kickbacks were by "unlicensed laypersons and/or healthcare professionals associated" with Appellants and that they were accomplished with "the assistance of the John Doe Defendants."

The district court asserts that "[t[he complaint also appends documentation to support GEICO's claims of fraudulent and medically unnecessary treatment,

including 'a representative sample of the fraudulent claims' (*id.* ¶ 7), which shows 8,423 allegedly fraudulent claims identified by GEICO as of the date the instant action commenced. (*Id.*, Ex. 1 (examples of billing submissions by Patel Medical)." But Compl. ¶ 7 is merely GEICO's statement that "[t]he chart annexed hereto as Exhibit "1" sets forth a representative sample of the fraudulent claims that have been identified to-date that Defendants submitted, or caused to be submitted, to GEICO through Patel Medical." And *Id. Ex. 1* is simply a list of claims. These are not a "documents to support GEICO's claims of fraudulent and medically unnecessary treatment." Furthermore, not one of these documents is sworn to. The only affidavit attached by GEICO (which "swears to the truth of the following under the penalty of perjury" on the last page right above the signature line), doesn't even mention the list of claims.

As another example, the district court cites paragraph 63 of the complaint and states that "GEICO offers as evidence the fact that" Patel Medical issued IRS 1099-NEC forms in 2021 to multiple unlicensed technicians who performed ESWT services on behalf of Patel Medical." But that paragraph merely states, "[h]owever, in keeping with the fact that Patel Medical used independent contractors to render many of the Fraudulent Services in violation of New York law, Patel Medical issued IRS 1099-NEC forms in 2021 to multiple unlicensed technicians who performed ESWT services on behalf of Patel Medical."

None of the foregoing are evidence. They are allegations, which Appellants intend to defend against throughout the pendency of this action. However, it should not be forced to do so while completely disadvantaged by a stay of its civil court cases and the inability to file additional collections actions for claims that were denied by GEICO.

Respectfully, the district court's order should be reversed in its entirety.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the district court abused its discretion by granting Plaintiff-Appellees' order (a) notwithstanding a lack of actual evidence and based on factual errors; and (b) despite the fact that none of the grounds articulated by the district court establish irreparable harm; and (c) even though the entire basis of the alleged harm is speculative and non-imminent; and (d) by ruling that the balance of hardships leans in Plaintiff-Appellees' favor; and (e) despite the order being in violation of the Anti-Injunction Act.

Consequently, Appellants respectfully request that this court reverse the district court's order in its entirety.

Yours, etc.


  /s/ Stefan Belinfanti
Stefan Belinfanti

53

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 12,892 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Times New Roman font with footnotes in 12 point Times New Roman font.

_/s/ Stefan Belinfanti_
Stefan Belinfanti